## The Chicago and Alton Railroad Company
### v.
## Amelia F. Robinson.

1.  CROSSING RAILROAD TRACKS—SIGNALS.—It is the duty of a person approaching a railroad crossing to carefully look out for approaching trains, although the signals required by law are not given, and it is gross negligence to omit this precaution.

2.  SLIGHT AND GROSS NEGLIGENCE—A QUESTION FOR THE JURY.—In actions for damages by reason of negligence of the party sued, and the defendant alleges contributory negligence on the part of the plaintiff, the question whether the negligence of the plaintiff was slight and that of the defendant gross in comparison, is peculiarly within the province of the jury to determine. But the question of comparative negligence should be submitted to the jury under instructions which state the rule fairly and do not tend to mislead them.

3.  PRESUMPTION—BURDEN OF PROOF.—In actions of this nature the law does not presume that either party has been guilty of negligence, and before a recovery can be had, the plaintiff must prove that he was in the exercise of reasonable care, and that the injury was occasioned by the negligent acts of the defendant.

4.  DEFENDANT ONLY NEEDS TO DISPROVE THE NEGLIGENCE CHARGED.— The defendant is called upon to disprove only the acts of negligence sought to be established. Thus, if the plaintiff relies upon a failure to ring a bell or sound a whistle, the defendant is not bound to show that its fences or cattle guards were in good condition.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding. Opinion filed January 18, 1881.

Mr. N. W. GREEN and Mr. M. D. BEECHER, for appel-

lant; that a failure to ring a bell or sound a whistle cannot be claimed as negligence unless it be shown that such failure was the occasion of the injury complained of, cited I. & St. L. R. R. Co. v. Blackman, 63 Ill. 117; G. & C. U. R. R. Co. v. Dill, 22 Ill. 271; Ill. Cent. R. R. Co. v. Phelps, 29 Ill. 447; T. W. & W. R. R. Co. v. Jones, 76 Ill. 311.

The rate of speed at which the train was running, coupled with the other facts in the case, it being a special train running to a wreck, cannot be construed as negligence: C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; St. L. A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; C. B. & Q. R. R. Co. v. Lee, 68 Ill. 576; T. W. & W. R. R. Co. v. Jones, 76 Ill. 312; C. B. & Q. R. R. Co. v. Damarell, 81 Ill. 450.

Appellee was guilty of negligence in going upon the track without looking for approaching trains: C. B. & Q. R. R. Co. v. Van Patten, 65 Ill. 510; Ill. Cent. R. R. C. v. Hall, 72 Ill. 222; L. S. & M. S. R. R. Co. v. Hart, 87 Ill. 529; Austin v. C. R. I. & P. R. R. Co. 91 Ill. 35; T. W. & W. R. R. Co. v. Jones, 76 Ill. 312.

Messrs. Prettyman & Sons and Mr. Wm. Don Maus, for appellee; that the jury were warranted in believing the testimony of appellee's witnesses as to failure to give signals, rather than that of employes of the road, cited C. B. & Q R. R. Co. v. Kauffman, 38 Ill. 424.

The jury might well find that the speed of the train was so great as to render signals unavailing, even if they believed signals were given: C. B. & Q. R. R. Co. v. Lee, 87 Ill. 454.

McCulloch, P. J. This case belongs to a class which are almost stereotyped in the courts of this State. Appellee while riding in a closely covered carriage with her husband, was injured by a collision between one of appellant's engines and the carriage at the crossing of a highway. The railroad and highway approach each other from the north-east and east on two sides of an acute angle. Appellee, with her husband, was approaching directly from the east along the highway on the north side of which were a hedge and a few apple-trees; but from the testimony of the husband these did not interpose any material

obstruction in the way of his seeing the approaching train. He was well acquainted with, and was in the habit of frequently passing over this crossing, and says he did not depend much on signals as he did not remember of any having ever been given at that point. From the time he entered appellant's right-of-way and passed the end of the hedge fence, which was at least fifty feet from the center of the track, he says he could have seen the engine if it had been within twenty-five or thirty rods of the crossing; that both he and appellee looked out and saw no train; that he drove slowly upon the track and saw no train until it was within two hundred feet of the crossing; that he did all he could to get out of its way but failed, and just as the carriage was about to leave the track it was struck by the engine causing the injuries to appellee for which this suit is brought.

The acts of negligence complained of are that appellant did not, at said crossing put up or keep warning boards, or keep a watchman; that it neglected to ring a bell or sound a whistle as required by law; that it carelessly and negligently permitted and suffered large banks of earth and weeds, brush and other obstructions to stand and grow at and along its track and grounds near said crossing, thus obstructing the view of passing trains; that it ran a wild train at a high and dangerous rate of speed at an unusual time of the day, and carelessly conducted said train without ringing a bell or blowing a whistle and without slackening its speed on approaching said crossing. It is true this was a wild or extra train, consisting of the engine, one baggage car and one coach, running at an unusual hour for passenger trains, and from the fact, in proof that it was going to the relief of a wrecked train further to the west, there appears to be a motive for its running at a very rapid rate, which also appears from the evidence. The injury was not caused by any failure to keep up warning boards, for appellee and her husband were aware of the existence of the railroad at that point as well as if the board had been there. Nor were there any such material obstructions, such as weeds or brush, growing upon appellant's right-of-way, as to have hidden the approaching train from view.

The case seems to rest upon whether or not appellant's servants, in running the train at an unusual hour at a great rate of speed; in failing to ring the bell or sound the whistle; in failing to keep a proper lookout or give proper warning, or to run the train with sufficient caution in approaching the crossing, were guilty of negligence which resulted in the injuries to appellee.   On the other hand, it is contended that appellee was guilty of such contributory negligence as to prevent a recovery, even if appellant's servants were guilty of some degree of negligence contributing to the injury.   Although the husband of appellee testifies that after entering upon appellant's right-of-way he could only see twenty-five or thirty rods in the direction of the approaching train, yet from the testimony of other credible witnesses, who went upon the ground and made actual observations with an engine and made accurate measurement, the evidence is very strong that, instead of thirty rods, the approaching train was plainly in sight from any point on the highway within appellant's right-of-way for a distance of at least sixty rods.   An incontrovertible fact in the case is that, at the moment the carriage entered the right-of-way of the railroad, the engine was at such a distance from the crossing that, when both carriage and engine had moved at their relative rates of speed during the interval of time occupied by the ca  .age in passing from the line of the right-of-way to the crossing, the collision occurred.   The husband of appellee testifies that he was then driving at the rate of about three miles per hour.   If this be true as to his rate of speed, then if the train was moving at thirty miles per hour, it would in the same time travel ten times the distance over which the carriage moved; or if the train was moving at sixty miles per hour, it would travel twenty times the distance over which the carriage moved in the same time.   The distance from the center of the track to the line of the right-of-way is shown to be about fifty feet, or three rods.   Now if the train had been running at the rate of sixty miles per hour, or one mile per minute, and the carriage moving at the rate of three miles per hour, or sixteen rods per minute, the train could not have been more than sixty

rods distant from the crossing, at the instant the carriage entered the right-of-way of the railway.

Considerable testimony was taken to show that several gaps existed in the hedge some distance back from the corner through which the approaching train could have been seen but we regard this of little consequence, as the time necessary for the carriage to pass from the nearest of them to the crossing would have given the train time to have run at least half a mile at a very moderate speed. There is also some evidence tending to show that the train was somewhat obscured by passing through cuts and by dirt thrown out upon the sides of the same. These, however, did not intervene between the carriage and the engine at any point between the passage of the carriage into the right of way and the place of the collision. The proof, therefore, strongly tends to show that, even if the train was moving at the extraordinary rate of sixty miles per hour, the persons in charge of the engine and those in the carriage were in full view of each other from the time the carriage came upon the right-of-way until the time of the collision. It appears also to be true that neither saw the other until just a moment before the collision. Had the speed of the carriage been accelerated but a second or two of time, or the speed of the train retarded by the same short space, the injury in all probability would not have happened. A trifle more diligence on the part of the engineer, a slight slackening of speed, the ringing of the bell, or the sounding of the whistle, might have been the means of avoiding a disastrous collision; while a very little more careful observation on the part of appellee or her husband (whose care or want of care as driver of the carriage must in this case be imputed to appellee) might have saved appellee from a life of permanent disability. As to which party is responsible for this calamity, and whether or not appellee's negligence, if any such is imputable to her, was slight, and that of appellant's servants was gross when compared with each other, are problems peculiarly within the province of the jury to determine. That it is the duty of a person approaching a railroad crossing to carefully look out for approaching trains, although the signals required by law are not

C. & A. R. R. Co. v. Robinson.

given, and that it is gross negligence to omit this precaution has been so often held to be the law that we forbear, citing authorities in support of the rule. In our view of the case, the acts of both parties were such as to require the question of comparative negligence to be submitted to the jury under instructions which stated the rule fairly, and such as would not tend to mislead them upon any branch of the case.

In a case of this kind the law does not presume that either party has been guilty of negligence, and before a recovery can be had the plaintiff must prove that he or she was in the exercise of reasonable care, and that the injury complained of was occasioned by the negligent acts of the defendant. When the case is made out on the part of the plaintiff, the defendant is called upon to disprove only the acts of negligence sought to be established by the plaintiff's evidence. It is not required to show that it has performed a duty devolving upon it by law, but which it is not charged with having violated. Thus, if the plaintiff relies upon a failure to ring a bell, or sound a whistle, the defendant is not bound to show that its fences or cattle guards were in good condition. So if the plaintiff's proof only goes to show negligence in managing the train, the defendant is not called upon to show that the proper warning boards were kept up at the crossing. This principle of law has, we think, been violated in this case.

The second of appellee's instructions defined in general terms appellant's duty to so regulate the speed of its trains, and to give such signals as to apprise persons of their approach; to keep a reasonable lookout so as to foresee and to prevent injury to persons traveling upon the highway and approaching a crossing with reasonable care. The third, fourth and fifth of appellee's instructions are as follows:

" 3. Every railroad corporation is required by law to cause signal boards, well supported by posts or otherwise, to be placed, and constantly maintained, upon each public road, where the same is crossed by its railroad upon the same level.

" 4. Every railroad corporation is required by the statutes of Illinois to place and keep a bell of at least thirty pounds weight and a steam whistle upon each locomotive engine, and to

cause the said bell to be rung or whistle sounded, by the engineer or fireman, at the distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and to keep the bell ringing or whistle whistling until such highway is reached.

" 5. The jury are instructed that where the jury believe from the evidence an injury is willfully done by a railroad company to a person, or results from a gross neglect of duty by the company, then the company is liable for such injury. To free themselves from liability, the company, in case of injury, must discharge every duty imposed by law. They must use every reasonable means to prevent injury, and an omission to do so will create liability, unless the injured party, by his negligence, contributed in some degree to the injury. "

By these instructions the jury are first informed that appellant was required by law to keep up signal boards at public road crossings, and to keep a bell and a steam whistle upon each locomotive engine, and to cause the same to be kept ringing or sounding for a distance of at least eighty rods before reaching the highway. By the eighth of appellee's instructions the jury were informed that the running of a train across a public thoroughfare where many persons are constantly passing, at an extraordinary rate of speed and at a time of day when trains are not usually run or expected, and without giving the warning or notice required by law, is evidence of carelessness and willfulness sufficient to sustain a recovery if plaintiff received her injuries in consequence thereof, and was in the exercise of reasonable care at the time of the accident If these facts were proved, then, according to the fifth instruction, appellant could free itself from liability, only by proving that it had discharged every duty, imposed by law; one of which, as specified in the third instruction, was to keep up a signal board at the crossing of the highway.

Now it will not be contended that there is any evidence in this record tending in the remotest degree to show that appellee received her injuries in consequence of there being no signal board at this particular crossing. Signal boards are to give warning to the unwary or those not acquainted with the

locality. In this case there is no complaint that either appellee or her husband was in the least misled or thrown off guard by the want of such a signal; they were both as fully aware they were about to cross a railroad as if the signal board had been in place. Under these instructions, the jury might well have understood they had a right to give damages as a penalty for non-compliance with the law in this paticular although the injury resulted wholly from other causes. There was no necessity for or propriety in giving the third instruction, and the giving of it rendered the fifth not only erroneous but positively misleading. Exception is also taken to the tenth of appellee's instructions, but, aside from its assuming a state of facts as proved, instead of submitting the instruction subject to the finding of facts by the jury, we see no material error in it for which we should be inclined to reverse the judgment. But for the errors in giving the third and fifth of appellee's instructions the judgment of the circuit court must be reversed and the cause remanded. Reversed and remanded.